**Michael Aaron Harwin, P.C.**
239 North Church Ave.
Tucson, Arizona 85701
(520) 624-3500
(520) 624-9207 Fax
michael@michaelharwin.com

**Michael A. Harwin**
Arizona Bar No. 015787
Pima County Computer No. 64916
Attorneys for Petitioners

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Colin Reilly and Sacha Reilly, | No. |
| Petitioners, | **MEMORANDUM OF LAW IN SUPPORT OF PETITION TO QUASH THIRD PARTY SUMMONS** |
| v. | |
| United States of America, | |
| Respondent. | |

The petitioners Colin Reilly and Sacha Reilly ("Petitioners"), through undersigned counsel, hereby submit a memorandum of law in support of the petition to quash third-party summons issued to Richard Schickel (the "Petition") filed contemporaneously herewith and respectfully request that the Court grant the Petition in its entirety.

1

I.      FACTUAL STATEMENT

A.      **2010 Tax Liability Settlement, IRS Collection Efforts & Richard Schickel's Representation**

In about May 2016, the Internal Revenue Service ("IRS" or the "Service") and petitioners Colin Reilly and Sacha Reilly (collectively, "Petitioners") reached a potential settlement agreement concerning Petitioners' 2010 tax liability, which is set forth in an IRS form called a "Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment." Petitioners agreed that they owed $1,570,461 and interest thereon, which, at that time, was about $284,947.00. The parties also agreed that Petitioners had no deficiencies and therefore no additional tax liability for 2009, 2011 and 2012.

Soon thereafter, the IRS began to take collection actions against Petitioners, which came to include several notices of intent to levy and, no later than September 2016, one or more liens on Petitioners' property in Arizona.

Petitioners were – and still are – unable to make a $1.8 million lump sum payment, as the IRS demanded. So, in about November 2016, they hired Richard Schickel, a former IRS officer and enrolled agent whose principal office is located in Tucson and who is licensed to practice before the Service.[1] Mr. Schickel was

---

[1] https://www.irs.gov/tax-professionals/enrolled-agents/active-enrolled-agents-and-the-freedom-of-information-act (last visited on Feb. 11, 2020) (in attached file,

2

retained to negotiate an installment payment plan and avoid a further escalation of IRS collection efforts.

At or about that time, Schickel verbally informed IRS agents that he represented Petitioners and filed a completed and signed Form 2848 Power of Attorney and Declaration of Representative with the Service on behalf of each Petitioner individually.

In 2017, Schickel drafted financial disclosure forms with the Service, as the IRS sometimes requires for the purpose of determining how a taxpayer can satisfy an outstanding tax liability. These forms, known as a "433-A" and a "433-B" provide information about Petitioners' personal financial circumstances and the financial circumstances of their business(es), respectively.

After several prior rounds of negotiations, on information and belief IRS officer Gayla Davis failed to accept Petitioners' offer to payment schedule. Davis claimed, in effect, on information and belief, that it was not a bona fide offer and instead, in the language of the Internal Revenue Manual, was an "installment agreement request made to delay collections." *See* Internal Revenue Manual section 5.14.3.3.2. According to Davis, there was "no economic reality" to the proposal, which the Manual defines, in relevant part, as "a proposed monthly

---

naming Schickel as an "active" enrolled agent and providing his Tucson office address).

payment amount [that] is nominal (for example $1 per month) or so small it does not come close to reflecting the taxpayer's ability to pay…." I.R. Manual section 5.14.3.3(3)(a). Davis further stated, incorrectly, that Petitioners had the ability to pay the entire $1.8 million in a single lump sum immediately.

Not only are Davis' assessments not true, Petitioners' proposal amount was no small sum. Subsequently, the IRS rejected Petitioners' offer to pay $7,500 per month for one year, amounting to $90,000, and then $12,500 per month thereafter, which amounts to $150,000 per year. In no sense are these sums "nominal" or so small that they do not reflect Petitioners' ability to pay. Rather, they show Petitioners' willingness to pay their 2010 tax liability, which Petitioners acknowledge is due and owing.

On information and belief, in all negotiations and communications with the Service concerning collection of the 2010 tax liability and related interest, Schickel represented Petitioners.

**B.     The IRS Issues The Summons To Schickel**

On January 24, 2020, IRS Special Agent Andrea Nemati ("Nemati") issued a summons to Schickel that requests the production of documents and Schickel's testimony in connection with a criminal investigation into Colin Reilly (the "Summons"). *See* Summons, at 5. The date and time for appearance is February 24, 2020. *Id*.

on February 24, 2020.

The Summons, which is vast in scope and highly intrusive, requests the production of documents relating to **all financial transactions over 9 years** as follows:

> FOR THE YEARS: 2010 – 2018…[a]ny and all documents in your custody or control relative to the financial transactions of: COLIN REILLY…[and] SACHA REILLY…[i]ncluding but not limited to the following: …
>
> All books, records, bank statements, canceled checks, deposit tickets, work-papers, financial statements, correspondence and other pertinent documents furnished by or on behalf of the above named client(s) for the preparation of state and federal income tax returns and for any other entity in which either or both of them have a financial interest, including but not limited to:
>
> All records used in or resulting from the preparation of federal and state income tax returns consisting of but not limited to work-papers, notes, papers, memoranda and correspondence used or prepared by you relative to the preparation of the aforementioned returns.
>
> Copies of federal and state income and payroll tax returns, state sales tax returns and amended tax returns. ·
>
> All records, books of account and other documents or papers relative to financial transactions of the principals.
>
> All client billing records relative to this client to include records disclosing the dates and types of service rendered; client account cards; billing invoices; records reflecting the dates, amounts, purpose, and method of all payments (cash or check); and all correspondence with this client.
>
> **All documents provided and relating to the collection of tax liabilities and the collection process. All Forms 433-A and 433-B in your**

> **possession, whether complete or partially complete. All documents/information used to prepare the Forms 433-A and 433-B.**
>
> **Any correspondence in reference to the above-named individuals and their entities, including but not limited to emails, letters, and facsimiles.**

(emphasis in original).

After learning about the Summons, Petitioners retained undersigned counsel, who met telephonically with IRS. At that time, Nemati stated that the investigation's object was evasion in payments and, as undersigned understood possibly criminal failure to pay income tax. *See, e.g., United States v. DeTar*, 832 F.2d 1110 (9th Cir. 1987) (elements of offense are "(1) willfulness and (2) failure to pay tax when due"). As discussed, Petitioners have offered to pay hundreds of thousands of dollars per year using post-assessment installment payment procedures established by the Service. In no sense can their conduct be considered willful.

Also, during conversations with IRS, agents mentioned that Petitioners appeared to live beyond their means as they are stated in documents filed with the IRS. It is entirely unclear what basis the IRS has for this conclusion, which, indeed, appears to be no more than fact-free speculation. The entire exercise of opening a criminal investigation and issuing a summons of vast scope appears to be a hard-ball tactic to squeeze money from Petitioners that they do not have.

Furthermore, the IRS knows that the target of the summons, Schickel, represented Petitioners with respect to post-assessment collection – a posture that is on the verge of litigation – and therefore, some responsive documents are privileged.

For these, and other reasons discussed below, the Court should grant the Petition in its entirety.

II.     ARGUMENT

A.      **The Summons Was Not Issued In Good Faith**

The Court must quash the Summons, as the IRS is not acting in good faith in accordance with the standards first articulated in *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), to wit (1) whether the investigation is conducted for a legitimate purpose; (2) whether the material sought is relevant to that purpose; (3) that the IRS is not already in possession of the material sought; and (4) and that the IRS has complied with the applicable administrative requirements.

The IRS is not conducting the investigation for a legitimate purpose as the true purpose is to pressure Petitioners to make a $1.8 million lump sum payment which they cannot afford, not to investigate a tax offense. As discussed, Petitioners have proposed an installment payment agreement in accordance with IRS post-assessment procedures in amounts that equal hundreds of thousands of dollars per year. These offers show an unequivocal willingness to pay Petitioners' taxes.

The Service's unsupported speculation about Petitioners' ability to pay is neither here nor there. The IRS must have some specific facts on which to base a grossly overbroad and intrusive third-party summons. *See, e.g., Tedder & Assoc. v. U.S.*, 77 F.3d 1166 (9th Cir. 1996) (quashing third-party summons, where there were "no discrepancies" between returns and documents already in IRS possession); *see also Nuechter v. U.S.*, 2001 WL 1244757 (C.D. Cal. July 13, 2001) (quashing summons, in part, where issued based on suspicion that luxury house sale was straw purchase because student owner abandoned it after significant renovations). The apparent lack of any concrete evidence of willfulness shows that this case is about coercive debt collection, not a tax offense.

Also, the Summons demands irrelevant documents. Indeed, a blunderbuss request for records relating to any and all financial transactions occurring over **nine years,** without any limitation, necessarily encompasses a host of materials unrelated Petitioners 2010 tax liability or ability to pay it. Furthermore, as shown, the IRS already conducted an audit and later agreed that Petitioners do not have any deficiencies with respect to their 2011 and 2012 taxes.

Also, the Summons demands federal tax returns and other forms that are already in the IRS' possession.

**B.     Overbreadth**

Also, the Summons is overbroad, as it demands materials unrelated to Petitioners' 2010 tax liability or even collection activity relating to that tax liability, and concerning tax years for which the Service already agreed Petitioners have no tax deficiency. *See, e.g., Nuechter v. United States*, 2001 WL 1244757 (C.D. Cal. July 13, 2001) (citing *United States v. Cox*, 73 F.Supp.2d 751, 758 (S.D.Tex. 1999)) (stating that "[a] taxpayer can challenge a summons, not only by showing an absence of good faith…but also upon the separate ground of overbreath" and granting motion to quash, in part, on this basis).

The IRS cannot, as it has done here, issue a summons that is "overbroad and disproportionate to the end sought" or to pursue a "fishing expedition" through third-party records. *See United States v. Theodore*, 479 F.2d 749 (4th Cir. 1973). Petitioners have made a credible proposal to pay their debt using IRS sanctioned procedures that will result in substantial annual payments and payment in full over time.  It does not appear that the IRS has anything beyond speculation to show that Petitioners can make the immediate $1.8 million lump sum payment that the Service demands. In light of this posture, a highly intrusive, blunderbuss summons demanding nine-years of records concerning numerous financial transactions is overbroad, unreasonable and a fishing expedition. Furthermore, the IRS has ignored meritorious privilege claims when drafting the Summons. For this reason, too, the Court should quash the Summons.

## C.     Privilege

Also, the Court should quash the Summons, as it requests privileged materials, including workproduct created because of anticipated litigation. *See Upjohn Co. v. U.S.*, 449 U.S. 383 (1981) (work product privilege applies to IRS summons). The workproduct doctrine applies to documents prepared by nonattorney agents and representatives, such as Schickel or parties themselves, such as Petitioners. *See* Fed.R.Civ.P., 26(b)(3)(A) (privilege extends to materials prepared "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)"); *see also Nichol v. City of Springfield*, 2015 WL 13229184 (D.Ore. Dec. 18, 2015) (modifying subpoena to exclude workproduct-privileged documents created by nonlawyer co-worker).

Also, it was reasonable to anticipate litigation in light of the IRS' aggressive collection activities with respect to a $1.8 million liability. *See, e.g., Barmes v. I.R.S.*, 60 F. Supp.2d 896 (S.D. Ind. 1998) (memos are workproduct, where created in anticipation of a suit to foreclose tax liens); *see also Hodges, Grant & Kaufmann v. U.S. Dep't of Treasury*, 768 F.2d 719 (5th Cir. 1985) (stating that documents "prepared in anticipation of dealing with the IRS" "well have been prepared in anticipation of an administrative dispute and this may constitute 'litigation' within the meaning of Rule 26"). Furthermore, due to the parties'

inability to agree on a payment plan, this matter inevitably was heading for litigation, which, in fact, is what has occurred.

Therefore, the Service should not be permitted to compel production of documents reflecting either Schickel's or Petitioner's opinions or mental impressions concerning the IRS collection matter or any witness statements or similar investigative material created or obtained in connection with the collection matter, *See, e.g., Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379 (D. Ariz. 2010) (holding that such materials are privileged workproduct).

Also, the Summons demands confidential communications that the tax practitioner privilege should shield from disclosure. *See* 26 U.S.C. § 7525(a)(1) (providing that "[w]ith respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney").

As an enrolled agent, Schickel is a tax practitioner whose communications with Petitioners about the collection matter are privileged.

It is true that, in the ordinary case, Petitioners could not invoke the privilege in a federal criminal tax case. *See* 26 U.S.C. 7525(a)(2) (limiting tax practitioner privilege to noncriminal administrative and judicial cases). Here, however,

communications were made in the context of a civil collections matter. Furthermore, the Service's switch from civil collection to criminal investigation is not justified and appears to be solely in aid of civil collection. Under these circumstances, the Service should be estopped from arguing that the privilege does not apply.

For these reasons, too, the Court should grant the Petition.

### III. CONCLUSION

For the reasons discussed above and in the Petition contemporaneously filed herewith, the Court should grant the Petition in its entirety.

RESPECTFULLY SUBMITTED this 11th day of February, 2020.

<u>/s/ Michael A. Harwin</u>
Michael A. Harwin, Esq.
Attorney for Petitioners

# SERVICE CERTIFICATE

I hereby certify that a copy of the foregoing document was mailed by certified or registered mail on this 11th day of February, 2020, to:

| | |
|---|---|
| Richard Schickel<br>2846 W. Magee Road<br>Tucson, Arizona 85742 | Andrea Nemati<br>Special Agent, IRS-CI<br>300 West Congress St, Suite 2M<br>Tucson, Arizona 85701 |
| United States Attorney's Office<br>Attn: Civil Process Clerk<br>405 West Congress St, Suite 4800<br>Tucson, AZ 85701-5040 | United States Department of Justice<br>Attorney General of the United States<br>Attn: Civil Process Clerk<br>950 Pennsylvania Ave NW<br>Washington, DC 20530-0001 |

By:    */s/ Michael A. Harwin*

      Michael A. Harwin

      Attorney for Petitioners